IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-3112-RBJ

SEAN SLATTON,

     Plaintiff,

v.

TODD HOPKINS, in his individual capacity,
BRANDON BARNES, in his individual capacity,
JOHN HUTTO, in his individual capacity, and
CITY OF FORT COLLINS, A MUNICIPALITY,

     Defendants.

---

## ORDER

---

This case is before the Court on two motions to dismiss. Defendant Todd Hopkins moves to dismiss all claims against him. ECF No. 96. Separately, defendants Brandon Barnes, John Hutto, and City of Fort Collins also move to dismiss. ECF No. 98. For the following reasons, defendant Hopkins' motion is granted, and defendants Barnes, Hutto, and the City of Fort Collins' motion is granted in part and denied in part.

### BACKGROUND

This case arises from an encounter between plaintiff Sean Slatton and two Fort Collins police officers, defendants Hopkins and Barnes, that occurred on December 3, 2016 when Mr. Slatton attended a sorority formal. The following description of the facts is based both on the

allegations in the Fourth Amended Complaint and two body camera videos of the events which both sides ask the Court to consider.

While inside the building where the formal was taking place, Mr. Slatton was confronted by an event employee about bringing in an alcohol flask.  Officers Hopkins and Barnes approached Mr. Slatton and instructed him to leave the property "in its entirety."  Mr. Slatton walked out of the building but remained standing outside the door holding a cell phone.  The officers walked outside and confronted Mr. Slatton again, Officer Hopkins asking, "What was the property part you didn't understand?"  Mr. Slatton responded that he was "waiting for his ride."  Officer Hopkins repeated that he had told Mr. Slatton that he needed to leave the property in its entirety, and Mr. Slatton said, "Ok, I will." *Id.*

But Officer Hopkins responded by asking for Mr. Slatton's ID.  Mr. Slatton asked, "for what reason?"  Officer Hopkins responded, "I'm detaining you for trespassing, let me see your ID."  Mr. Slatton said, "I'm not trespassing, I'm leaving right now," and began to walk away.  Officer Hopkins repeated, "I need to see your ID right now, right now."  Mr. Slatton continued walking away, repeating that he was leaving, and Officer Hopkins told him to "stop."  Mr. Slatton turned and said, "I am leaving the property right now," and that he was "filming this right now."  But he turned away again and resumed walking away when Officer Hopkins again ordered him to "stop," adding that "you are under arrest.  Mr. Slatton said, "no I'm not," and he continued to walk away, at which point Officer Hopkins struck Mr. Slatton on the leg with a baton.  Mr. Slatton turned, still holding the phone, and said something like, "right now, what you're doing," at which time Officer Hopkins sprayed him with pepper spray.  Mr. Slatton then took off running.

Officers Hopkins and Barnes gave chase but were unable to find Mr. Slatton.  However, they had radioed for assistance, including a description of Mr. Slatton, and that he had been pepper sprayed.  "Shortly thereafter, Mr. Slatton stopped running because he was struggling to breathe and in intense pain from the pepper spray."  ECF No. 94 (Fourth Amended Complaint) at ¶41.  "Mr. Slatton was then contacted by other FCPS officers, who detained him without any issues."  *Id.* at ¶42.  "He was transported to the hospital by an ambulance."  *Id.*

Later that evening, Mr. Slatton was removed from the hospital to the Larimer County Jail, where he was booked on charges of Third Degree Criminal Trespassing, Obstructing a Peace Officer, and Resisting Arrest.  He was released on bond the following morning.  *Id.* at ¶¶46, 48.  On September 14, 2017 all charges against Mr. Slatton were dismissed.  *Id.* at ¶49.

On December 3, 2018 Mr. Slatton filed a pro se complaint alleging false arrest, false imprisonment and excessive force in violation of the Fourth Amendment.  ECF No. 1.  After several other amendments, on December 19, 2019 Mr. Slatton, now represented by counsel, filed his Fourth Amended Complaint, alleging unlawful seizure and excessive force under the Fourth and Fourteenth Amendment.  Officer Hopkins moves to dismiss all claims against him.  ECF No. 96.  Officers Barnes, Hutto, and the City of Fort Collins separately move to dismiss all claims against them.  ECF No. 98.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is one that "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While courts must accept well-pled allegations as true, purely conclusory statements are not

entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient

factual allegations such that the right to relief crosses "the line from conceivable to plausible,"

she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

      Generally, a 12(b)(6) motion must be converted to a motion for summary judgment if

"matters outside the pleading are presented to and not excluded by the court." Fed. R. Civ. P.

12(b). However, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion

without converting the motion to dismiss into a motion for summary judgment." *Hodgson v.*

*Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished) (quoting *Tal v.*

*Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006)) (internal quotation omitted).

Additionally, "if a plaintiff does not incorporate by reference or attach a document to its

complaint, but the document is referred to in the complaint and is central to the plaintiff's claim,

a defendant may submit an indisputably authentic copy to the court to be considered on a motion

to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.

1997).

      Here, as noted above, both parties ask the Court to consider the body camera videos. The

parties dispute whether the Court should take judicial notice of the transcript and ruling from Mr.

Slatton's motion to suppress hearing, where the judge found probable cause for his arrest. ECF

No. 96 at 4–5; ECF No. 109 at 3–4. "On a Rule 12(b)(6) motion to dismiss, when a court takes

judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited

therein, but for the existence of the opinion, which is not subject to reasonable dispute over its

authenticity.'"  *The Estate of Lockett by and through Lockett v. Fallin,* 841 F.3d 1098, 1111 (10th

Cir. 2016) (quoting *Lee v. City of L.A.,* 240 F.3d 668, 690 (9th Cir. 2001), which in turn quoted *S.*

*Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir.

1999)).

## I.  HOPKINS' MOTION TO DISMISS.

In this Court's opinion, neither Mr. Slatton nor Officer Hopkins should be proud of their

behavior that evening.  Mr. Slatton should have left the property after the officers told him to do

so.  Officer Hopkins should have let him leave when, after being reminded that he was told to

leave the property in its entirety, he said he would.  Instead, having made the decision to detain

Mr. Slatton for trespassing, Officer Hopkins set off a chain of events that led to the use of force

that likely would not have occurred had he exercised better judgment.  Nevertheless, I conclude

for the reasons discussed next that even if an unreasonable seizure occurred, and even though

Officer Hopkins used excessive force, he is entitled to qualified immunity under currently

prevailing law.

### A.  <u>Whether Mr. Slatton was Unlawfully Seized.</u>

The Fourth Amendment provides that the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures . . . shall not be

violated."  U.S. Const. amend. IV.  In his First Claim for Relief plaintiff alleges that Officer

Hopkins and Officer Barnes violated his Fourth Amendment rights by unlawfully seizing him.

His focus is primarily on Officer Hopkins.

Officer Hopkins argues that Mr. Slatton failed to allege a seizure because his freedom of

movement was never terminated.  ECF No. 96 at 5.  Alternatively, he argues that if there was a

seizure, it was reasonable because he had reasonable suspicion to seize Mr. Slatton for

trespassing and probable cause to arrest him for obstruction.  *Id.* at 6.  He also maintains that

issue preclusion bars relitigation of probable cause.  *Id.* at 10.

       1.  <u>Whether a Seizure Occurred</u>.

A seizure occurs "when there is a governmental termination of freedom of movement

through means intentionally applied."  *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989).  The

government effectuates a seizure through either a show of authority or the application of physical

force, to which the subject yields.  *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991).

Officer Hopkins argues that he never terminated Mr. Slatton' freedom of movement

because Mr. Slatton did not submit to his show of authority or use of force, and he was

unsuccessful in chasing him down.  ECF No. 96 at 5–6.  Mr. Slatton argues that Officer Hopkins

seized him by pepper spraying him which, though it did not stop him from running away,

ultimately led to his apprehension by other FCPS officers.  *See* ECF No. 109 at 7–8.[1]

In *California v. Hodari D.*, the Supreme Court concluded that the defendant was not

seized by a show of authority from which he fled.  499 U.S. at 629.  Instead, the defendant was

seized only after he was tackled while running away from the officers.  In *Farrell v. Montoya*,

878 F.3d 933 (10th Cir. 2017), the court found that, though an officer hit the plaintiffs' vehicle

with his baton and fired his gun at their vehicle, the plaintiffs "were not seized because, in

---

[1] Plaintiff's response suggsests that Mr. Slatton was apprehended four minutes after he fled.  ECF No. 109 at 7.  However, he did not allege in his Fourth Amended Complaint that the gap was four minutes.  Rather, as quoted above, it alleged that he stopped running "shortly thereafter" and was "then contacted by other FCPS officers." ECF No. 94 at ¶¶41, 42.  There was a reference to a "four minute" gap in the *Farrell* case discussed in the response brief at 5, but there was no basis for plaintiff to suggest in their response brief that the same number applied to Mr. Slatton's apprehension.

fleeing, they were not submitting to the officers."  878 F.3d at 937. In *Brooks v. Gaenzle*, 614 F.3d 1213 (10th Cir. 2010), a plaintiff alleged that he was seized when an officer shot him, though he subsequently fled and evaded the police for three days.  The court noted that "what constitutes actual 'submission,' . . . depends on 'the totality of the circumstances—the whole picture.'"  *Id.* at 1221 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).  With this in mind, the court concluded that there was no seizure because the gunshot did not terminate the plaintiff's movement or "otherwise cause the government to have physical control over him," as evidenced by the "fact he continued climbing the fence and eluding arrest for three days, after which . . . he still had enough spring in his step to evade police in the mall parking lot and cause them to chase him to a nearby house."  *Id.* at 1224.  The court also rejected the plaintiff's assertion that pained or slowed movement resulting from the gunshot constituted a seizure.  *Id.* at 1224–25.  Finally, the court cast doubt on whether a momentary termination of movement could suffice to show that a suspect had yielded.  *Id.* at 1225.

Mr. Slatton acknowledges that there is no Tenth Circuit case law finding a seizure in circumstances like the facts here.  *Id.* at 5.  Instead he attempts to distinguish *Farrell* and *Brooks,* and he cites cases from other jurisdictions.

Mr. Slatton contends that *Brooks* and *Farrell* are distinguishable because the officers' actions at the scene did not cause the plaintiffs' apprehension.  In *Brooks*, the plaintiff evaded the police for three days following the force he alleged to have effectuated a seizure.  614 F.3d at 1221.  In *Farrell*, though the officers shot at the fleeing vehicle, the plaintiffs were not apprehended until the pursuing officers trapped them in a parking garage after approximately four minutes of chase.  878 F.3d at 936.  Those cases contrast, he argues, with the present case in

which the pepper spray allegedly caused Mr. Slatton's submission and arrest shortly after the incident outside the sorority formal.

In *Yelverton v. Vargo*, 386 F. Supp. 2d 1224, 1228 (M.D. Ala. 2005), an officer's use of pepper spray on a suspect constituted a seizure, though the suspect continued to drive away after being sprayed.  The court relied on *Hodari D.* for the principle that "'application of physical force to restrain movement, even when it is ultimately unsuccessful' is sufficient to constitute a seizure."  *Id.* (quoting *Hodari D.*, 499 U.S. at 626).  However, in *Brooks* the Tenth Circuit noted that this portion of *Hodari D.* is dicta and rejected the plaintiff's reliance on it.  614 F.3d at 1221.  The *Brooks* court found that in context, *Hodari D.* makes clear that "a seizure cannot occur unless a show of authority results in the suspect's submission."  *Id.*  Because it directly contravenes the Tenth Circuit's reading of *Hodari D.* in *Brooks*, I cannot find that *Yelverton* supports Mr. Slatton's argument.

In *Griffin v. Runyon*, WL 1344818, at *7 (M.D. Ga. May 16, 2006), the court found that Mr. Griffin was seized after he was pepper sprayed, though he then left the area.  The court considered the fact that the officer's efforts to terminate the plaintiff's movement were unsuccessful to be irrelevant because there was a "calculated effort to prevent [plaintiff's] flight and bring him into compliance".  *Griffin*, like *Yelverton*, relies on language from *Hodari D.* that the Tenth Circuit has rejected.

Finally, in a footnote Mr. Slatton suggests that this Court should ignore the Tenth Circuit's reading of *Hodari D* because the Supreme Court granted certiorari in *Torres v. Madrid*, a recent Tenth Circuit case on this issue.  769 F. App'x 654 (10th Cir.) (unpublished), *cert. granted*, 140 S. Ct. 680 (2019).  In *Torres*, a woman who believed that officers approaching her

vehicle were carjackers fled in her vehicle while officers shot at and struck her twice.  769 F. App'x at 654.  After pulling over, stealing another car, and driving 75 more miles, she was eventually airlifted to a hospital for treatment of her injuries and taken into custody.  *Id.*  The Tenth Circuit concluded that the case was governed by *Brooks*, and that because "the officers' use of deadly force against Torres failed to 'control [her] ability to evade capture,'" as evidenced by her evasion of the police for a full day, no seizure had occurred.  *Id.* (quoting *Brooks*, 614 F.3d at 1223).  Though Ms. Torres' petition for a writ of certiorari was granted, this does not allow this Court to go against the clear application of Tenth Circuit precedent to this case.

I must, in the context of a motion to dismiss, accept the truth of the allegation that the effects of the pepper spray caused Mr. Slatton to stop running "shortly thereafter," and that other officers "then" apprehended him.  If those facts were true, then there is at least some rationale for arguing that there was a seizure.  It's a debatable issue and one that I need not resolve today.  Instead, I will assume for present purposes that Officer Hopkins' use of pepper spray effected a seizure even though Mr. Slatton temporarily evaded capture until the pepper spray brought him to a halt.

> 2.  <u>Was the Purported Seizure Reasonable</u>?

A seizure must be supported by either reasonable suspicion to detain or probable cause to arrest.  *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).  Officer Hopkins alleges he had both, ECF No. 96 at 6, while Mr. Slatton alleges he had neither, ECF No. 109 at 9.  Officer Hopkins also asserts that issue preclusion moots the issue.  ECF No. 96 at 10.  I'll begin there.

> a.  <u>Issue Preclusion</u>.

Officer Hopkins claims that the reasonableness of his alleged seizure of Mr. Slatton was decided by the Larimer County Court's probable cause finding at Mr. Slatton's April 28, 2017 suppression hearing.  ECF No. 96 at 10.  Issue preclusion may apply to a § 1983 action when the conduct underlying the § 1983 claim was the subject of a state court proceeding that afforded the parties a full and fair opportunity to litigate the claim.  *See Allen v. McCurry*, 449 U.S. 90, 104 (1980).  Federal courts must give a prior state court judgment the same preclusive effect that such a judgment would be given in the courts of the state from which the judgment emerged. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982).  Because Mr. Slatton's suppression hearing was held in a Colorado state court, Colorado's formulation of issue preclusion applies here.

In Colorado, an issue is barred from relitigation when

(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*In re Water Rights of Elk Dance Colorado, LLC*, 139 P.3d 660, 667 (Colo. 2006), *as modified on denial of reh'g* (July 31, 2006).

Mr. Slatton argues that the third and fourth criteria of the *Elk Dance* case are not met here.  ECF No. 109 at 15.  On the third requirement, Mr. Slatton contends that because the charges against him were dropped before he had an opportunity to appeal the probable cause finding, there was no "final judgment on the merits" of the issue.  *Id.* at 16.  "[I]n order to be accorded preclusive effect, a judgment must be 'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, *and there was an opportunity for review.*"

*Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo. 2005) (quoting *Carpenter v. Young By & Through Young*, 773 P.2d 561, 566 (Colo. 1989)) (emphasis added).  Mr. Slatton did not have an opportunity to obtain review of the probable cause finding.

Officer Hopkins argues that *McNally v. Colo. State Patrol*, 122 F. App'x 899, 903 (10th Cir. 2004) (unpublished) supports his position.  In *McNally* the plaintiff argued that because his conviction was overturned for ineffective assistance of counsel, the finding of probable cause at his suppression hearing was no longer valid and could not bar his Fourth Amendment claim. Based on the somewhat complicated history of the case, the court concluded that "issue preclusion applies even in the absence of a final judgment" on the merits.  In doing so, the court relied on the federal issue preclusion standard.  Here I have concluded that the Colorado issue preclusion standard applies.  Colorado courts have made clear that an opportunity for review is required to preclude relitigation of an issue.  *See, e.g.*, *Stanton v. Schultz*, 222 P.3d 303, 309 (Colo. 2010); *Rantz*, 109 P.3d at 141; *Carpenter*, 773 P.2d at 566.  *See also Cook v. Aagard*, 547 F. App'x 857, 859 (10th Cir. 2013) (unpublished) (applying Utah claim preclusion standard to determine whether underlying Utah criminal proceedings precluded current issue).

For the sake of finality, I note that I do not agree with Mr. Slatton's additional argument that the fourth *Elk Dance* criterion was not met here.  He contends that he did not have a full and fair opportunity to litigate the issue in the state proceeding because the suppression hearing lasted only an hour before a state court judge, and that his claims in this case are much broader than in his motion to suppress.  ECF No. 109 at 16–17.  However, simply put, I found no evidence the suppression hearing transcript or the court's ruling that Mr. Slatton's attorney was limited in the arguments she made by the length of the hearing, nor did I find anything else

suggesting that the fact that the hearing occurred in state court might have prevented Mr. Slatton

from litigating this issue.  The cases on which Mr. Slatton relies to argue the contrary are easily

distinguishable.

The bottom line is that because I conclude that there was no opportunity for review of the

state court's finding that officers had probable cause to arrest Mr. Slatton, I will not resolve the

"reasonableness" issue presented in this Court by issue preclusion.

        b.  Reasonable Suspicion or Probable Cause.

Regardless of issue preclusion, however, I find that the seizure was reasonable.

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of

which he or she has reasonably trustworthy information are sufficient to lead a prudent person to

believe that the arrestee has committed or is committing an offense."  *Mocek v. City of

Albuquerque*, 813 F.3d 912, 925 (10th Cir. 2015) (quoting *York v. City of Las Cruces*, 523 F.3d

1205, 1210 (10th Cir. 2008)).  To satisfy reasonable suspicion, "the detaining officer must have,

based on all the circumstances, a particularized and objective basis for suspecting the person

stopped of criminal activity."  *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009)

(quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)) (internal quotations omitted).

Under Colorado law "[a] person commits the crime of third degree trespass if such person

unlawfully enters or remains in or upon premises of another."  C.R.S. § 18-4-504(1).  Officer

Hopkins argues that after ordering Mr. Slatton to "leave the property in its entirety," he watched

as Mr. Slatton did not do so.  ECF No. 96 at 7.  Thus, Officer Hopkins claims, he had probable

cause or at least reasonable suspicion to believe that Mr. Slatton had committed or was

committing criminal trespass by remaining on the property he had been ordered to leave.  *Id.*

Mr. Slatton does not dispute that he was asked to leave the property, or that when the seizure was attempted, he was still on the property.  ECF No. 109 at 11.  Nor does Mr. Slatton argue that had he continued to remain on the property, Officer Hopkins would not have had probable cause to arrest him for criminal trespass.  *Id.*  Rather he claims he was given insufficient time to comply with the order to leave the property.  *Id.*

Reasonable suspicion to detain "requires that an officer provide 'some minimal level of objective justification.'"  *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 217 (1984)).  An officer "need not 'rule out the possibility of innocent conduct' as long as the totality of the circumstances suffices to form 'a particularized and objective basis.'"  *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 277–78 (2002)).  Mr. Slatton remained on the property after being told to leave the property in its entirety.  I conclude that Mr. Slatton's conduct was sufficient to warrant reasonable suspicion of third degree trespass.

Mr. Slatton argues that the officers "should have" backed off after he notified them that he was just waiting for a ride, and that he would leave.  ECF No. 109 at 11.  I don't disagree. Officers are trained to deescalate situations, but Officer Hopkins did not try to deescalate this situation.  But there is a difference between poor judgment and violation of the Constitution.  I am not aware of any constitutional mandate that an officer must give an individual a second chance to comply with a lawful order to leave the property after he fails to comply the first time.

Moreover, when Mr. Slatton refused to comply with the demand that he produce his ID, began to walk away, disregarded the order to "stop," and continued to walk away, I find that the officers had probable cause to arrest him for trespass or for obstruction, i.e., that Mr. Slatton

"intentionally obstruct[ed, impair[ed], or hinder[ed] the performance of a governmental function by a public servant, by using. . . physical interference or obstacle."  Colo. Rev. Stat. § 18-8-102(1).

Because I find that Officer Hopkins had reasonable suspicion to detain Mr. Slatton, and then developed probable cause to arrest him, I grant the motion to dismiss Mr. Slatton's Fourth Amendment unlawful seizure claim against Officer Hopkins.

**B. <u>Excessive Force</u>.**

In *Graham v. Connor,* 490 U.S. 386 (1989) the Court held "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395.  Likewise, in *Estate of Booker v. Gomez,* 745 F.3d 405 (10th Cir. 2014, the court stated, "[a]ny force use 'leading up to and including an arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures." *Id.* at 419.  But in *Brooks* the Tenth Circuit stated, "t]o state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" 614 F.3d at 1219.

I have assumed, without deciding, that there was a seizure.  I have concluded, however, that it was not an unreasonable seizure.  I think, under *Graham* and *Estate of Booker,* the Fourth Amendment is probably the right niche for assessing the constitutionality of Officer Hopkins' use of force.  If not, however, then his use of force may be examined under the due process clause incorporated in the Fourteenth Amendment.  The tests vary somewhat according to

14

whether the force is analyzed under the Fourth or Fourteenth (or Eighth or Fifteenth) Amendments. *Estate of Booker,* 745 F.3d at 419,  In this instance, it doesn't ultimately matter, because even if I find (as I do) that Officer Hopkins applied excessive force, I find that he is entitled to qualified immunity.

Excessive force claims under the Fourth Amendment are governed by an "objective reasonableness" standard. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010).  "Under this standard, 'the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Whether force was objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,*  490 U.S. at 396.

Here, the third factor weighs somewhat in favor of defendants, as Mr. Slatton was attempting to walk away from the officers when he was struck with a baton and then pepper sprayed.  However, the crime (third degree trespass, even the obstruction in context) was not severe.  There was no threat to the officers or others.  Office Hopkins overreacted by striking Mr. Slatton with his baton and then, unnecessarily, doubled down by spraying pepper spray in his face.  I have no trouble concluding that the use of force on Mr. Slatton was objectively unreasonable.

If the use of force were instead analyzed under the Fourteenth Amendment, the "motives of the state actor" would also come into play. *Estate of Booker,* 745 F.3d at 419. I infer from the allegations of the Fourth Amended Complaint and from the videos that Officer Hopkins' motive was to prevent Mr. Slatton from leaving by partially disabling him via both the baton strike to his leg and pepper spraying his face from a very short distance. I find that the motive was both unreasonable and improper in the circumstances. Thus, under either the Fourth or the Fourteenth Amendment Officer Hopkins used excessive force.

### C. **Qualified Immunity.**

Qualified immunity protects government officials acting in their official capacity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is asserted by an official, a plaintiff must satisfy the burden of showing (1) that the defendant violated a constitutional right (2) that was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A reviewing court has discretion to address either prong first. *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). I have found that the plaintiff has sufficiently alleged facts that, if true, would establish a violation of his constitutional right not to be subjected by a police officer to the use of excessive force. Therefore, I turn to the second prong, was the right clearly established at the time of the violation.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations

omitted).  "A plaintiff may show clearly established law by pointing to either a Supreme Court or

Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the

alleged violation."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017).  "[C]learly established

law should not be defined at a high level of generality."  *White v. Pauly*, 137 S. Ct. 548, 552

(2017) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)) (internal quotations omitted).

However, although a plaintiff need not identify "a case directly on point, existing precedent must

have placed the statutory or constitutional question beyond debate."  *Mullenix*, 136 S. Ct. at 308;

*see also White*, 137 S. Ct. at 551; *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019)

(unpublished).

Mr. Slatton must therefore show that the conduct at issue was a clearly established

excessive force violation.  The relevant conduct here is an officer's use of force against a suspect

who continues to walk away from officers after first being told he was being detained and then

being told that he was under arrest.  I find that none of Mr. Slatton's proffered cases show that

this conduct was a clearly established violation.

Mr. Slatton points first to *Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016).  In

*Davis*, officers began pounding on plaintiff's vehicle during a traffic stop, demanding that she

exit.  825 F.3d at 1131.  When the plaintiff asked for assurances that she would not be hurt, the

officers "responded by smashing her car window, pulling her through the broken window by her

hair and arms, and throwing her on the glass-littered pavement."  *Id*.  Unsurprisingly, the Tenth

Circuit found the officers had used excessive force.  *Id.* at 1136.

Mr. Slatton argues that *Davis* establishes that "minor offense[s]—at most—support the

use of minimal force," and that "[t]he use of disproportionate force to arrest an individual who

has not committed a serious crime and who poses no threat to herself or others constitutes excessive force."[2]  *Id.* at 1137.  This general proposition supports Mr. Slatton's argument, but *Davis* is insufficiently factually similar to show that Officer Hopkins' actions were a clearly established violation.  In determining whether "existing precedent [has] placed the statutory or constitutional question beyond debate," a court must consider "whether the violative nature of *particular* conduct is clearly established."  *Mullenix*, 136 S. Ct. at 308 (quoting *al–Kidd*, 563 U.S. at 741 and *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)) (emphasis in original).  "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Id.* (quoting *Brosseau*, 543 U.S. at 198).  The Supreme Court has also noted that "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'"  *Id.* (*quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Mr. Slatton next cites *Morris v. Noe*, 672 F.3d at 1190.  In *Morris,* police officers responded to a domestic disturbance.  Plaintiff's husband, a participant in an ongoing argument on the front lawn of the residence, was approached by another argument participant, and he "put

---

[2] The *Davis* court found that such general principles were sufficient to find a violation clearly established, when the facts were "obviously egregious in light of prevailing constitutional principles."  825 F.3d at 1136.  However, that court relied on the "sliding scale" clearly-established standard, which the Tenth Circuit has since ceased to employ and which it has suggested may conflict with recent Supreme Court precedent on qualified immunity.  *See Lowe v. Raemisch*, 864 F.3d 1205, 1211 n.10 (10th Cir. 2017) ("But our sliding-scale approach may arguably conflict with recent Supreme Court precedent on qualified immunity.  The possibility of a conflict arises because the sliding-scale approach may allow us to find a clearly established right even when a precedent is neither on point nor obviously applicable." (citing *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016)) (internal citations omitted)); *McCoy v. Meyers*, 887 F.3d 1034, 1053 (10th Cir. 2018) (same).  Thus, the general principles articulated in *Davis* cannot by themselves show the instant facts were a clearly established violation.

his hands up and started backing toward the police officers." *Id*. Two of the officers then "lunge[d] towards [plaintiff's husband] and put their hands on his shoulders, twisted him around and ran him into the bushes . . . throwing him to the ground." *Id*. Again, the Tenth Circuit found the officers had applied excessive force because, even assuming they had probable cause, plaintiff's husband was attempting to deescalate by backing away from his confronter, therefore posing no threat, and was not resisting arrest or attempting to flee. *Id*. at 1195–96.

This case too is factually dissimilar to Mr. Slatton's. Most significantly, Officer Hopkins had at least some reason to believe Mr. Slatton was resisting arrest or attempting to flee. When Officer Hopkins informed Mr. Slatton he was under arrest, Mr. Slatton said, "no I'm not," and he began to move away from the officers. ECF No. 96-1; ECF No. 94 at 6.

Mr. Slatton also cites *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007). In *Casey*, plaintiff challenged a traffic ticket at a courthouse and was given his court file so that he could appeal, then unlawfully removed the court file from the courthouse while retrieving money from his truck to pay a fine. *Id*. at 1279. While returning to the courthouse with the file and money, plaintiff was confronted by an officer who asked for the file, which plaintiff held out to him. *Id*. at 1280. The officer did not take the file, so plaintiff continued back toward the courthouse. *Id*. The officer put plaintiff in a painful arm-lock, jumped on plaintiff's back and attempted to tackle him, without indicating that he was under arrest or advising him to stop resisting. *Id*. Another officer arrived and immediately tased plaintiff. *Id*. After plaintiff disengaged the taser wires, several more officers arrived, "brought Mr. Casey to the ground, handcuffed him tightly, and repeatedly banged his face into the concrete." *Id*. He was then tased again. *Id*.

Like *Morris*, *Casey* differs significantly from the instant case in that the officers in *Casey* had no reason to believe the plaintiff was "actively resisting arrest" or "attempting to evade arrest by flight." *Id.* at 1282. The officer in Casey "never told [plaintiff] he was under arrest," and the plaintiff was not attempting to flee, but rather to reenter the courthouse to return the file as requested. *Id.* at 1280. The *Casey* court noted that "[t]he Fourth Amendment permits increased force when a subject is attempting to run away and thereby evade capture," and that "[i]f anything, by returning to the courthouse rather than to his truck [plaintiff] would have made himself easier to capture, not harder." *Id.* at 1282. In contrast, Mr. Slatton continued to walk away from the officers after they told him he was being detained, after being told to "stop," and after being told he was under arrest (to which he responded, "no I'm not").

Finally, Mr. Slatton cites *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010), a Second Circuit case which cannot by itself show that a violation was clearly established in this circuit. *See Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (quoting *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012)) ("[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." (internal quotations omitted)).

Mr. Slatton has failed to show that the particular conduct amounted to a violation of clearly established law. I reiterate that Mr. Slatton was not obligated to present an identical case. *Mullenix*, 136 S. Ct. at 308. He was required to establish that the particular conduct, using this type of force as a suspect walked away from officers after being told he was under arrest, was

"beyond debate." *Id.*  He has not met this burden.  I conclude that Officer Hopkins is entitled to qualified immunity from Mr. Slatton's excessive force claim.

## II.  BARNES, HUTTO, AND CITY OF FORT COLLINS' MOTION TO DISMISS.

In addition to arguments of their own, Defendants Barnes, Hutto, and the City of Fort Collins ("City defendants") incorporate all the arguments made by Officer Hopkins in his motion.  ECF No. 98 at 2 n.1.

### A.  **Officer Barnes**

Mr. Slatton's unlawful seizure claim alleges that Officer Barnes had a duty to intervene when Officer Hopkins was in the process of committing a constitutional violation.  ECF No. 94 at 16.  To the extent this relates to the seizure, the claim fails for the same reason as that against Officer Hopkins: if there was a seizure, the officers had reasonable suspicion to detain, and when he walked away after being told he was being detained, probable cause to arrest Mr. Slatton.

As for Officer Hopkins' use of excessive force, plaintiff does not supply case law indicating that a reasonable officer in Officer Barnes' position would have known that he had a duty to intervene.  *See Savannah v. Collins*, 547 F. App'x 874, 875 (10th Cir. 2013) (unpublished) (finding plaintiff had failed to provide evidence showing officer's duty to intervene).  Just as importantly, as a practical matter, the videos demonstrate that Officer Hopkins' baton strike and pepper spraying happened so suddenly and quickly that it appears quite unlikely that Officer Barnes even had time to intervene.

### B.  **Claim Against Chief Hutto and the City of Fort Collins.**

Mr. Slatton's excessive force claim against Chief Hutto and the City of Fort Collins is predicated on Officer Hopkins' use of excessive force.  ECF No. 94 at 18–21.  He alleges that

Officer Hopkins' actions occurred because of the City's and Chief Hutto's failure to train, supervise, or discipline their employees and were part of a custom or practice. *Id.* Although I have found that Officer Hopkins is entitled to qualified immunity from plaintiff's claim for money damages against him, I have also found that he did apply excessive force. Accordingly, I examine whether that force could give rise to a viable claim against either the Chief or the City.

      1. <u>Chief Hutto.</u>

Defendants argue that Mr. Slatton has failed to state a claim against Chief Hutto because his complaint fails to allege Chief Hutto's personal participation in the alleged conduct. ECF No. 98 at 8–9. The Chief obviously did not participate personally in the incident at the sorority formal. But plaintiff's theory is that Chief Hutto is responsible for Officer Hopkins' actions because he promulgated and tolerated a policy of excessive force.

The Tenth Circuit held in *Dodds v. Richardson* that a plaintiff may succeed in a § 1983 suit against a "defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." 614 F.3d 1185, 1199 (10th Cir. 2010) (citing *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)). Essentially, Mr. Slatton must "establish '(1) personal involvement; (2) causation, and (3) state of mind'" on the part of Chief Hutto. *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)).

To show personal involvement, Mr. Slatton alleges that Chief Hutto oversaw training, supervised, and managed FCPS, as well as of established its policy and practices. ECF No. 94 at

8–9.  He alleges that Chief Hutto condoned and ratified the use of excessive force and communicated to officers that such force was authorized and expected.  *Id*. at 9.  He alleges that Chief Hutto knew of the history and practice of Fort Collins officers' use of excessive force.  *Id*. at 11.  He also alleges that Chief Hutto either promulgated a policy of excessive force or made a choice not to train officers appropriately and thus "fostered a policy of inaction."  *Id*. at 11–12.  This is sufficient at this stage of the case to satisfy the first *Dodds* criterion.  *See Perry*, 892 F.3d at 1122 (requiring plaintiff to show supervisor was responsible for but failed to create and enforce policies to protect plaintiff from rape).

To show causation, a plaintiff must show that the supervisor "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive [plaintiff] of her constitutional rights."  *Id*. (quoting *Keith v. Koerner*, 843 F.3d 833, 840 (10th Cir. 2016)) (internal quotation omitted).  Mr. Slatton has alleged that Chief Hutto purposely communicated to Fort Collins officers that such force would be tolerated and even expected.  I find that plaintiff's allegations, if construed as true, are sufficient to show that Chief Hutto had a role in the series of events leading to the alleged violation.

To show state of mind Mr. Slatton must show that Chief Hutto had the requisite state of mind for the underlying constitutional violation.  *Dodds*, 614 F.3d at 1200.  For a Fourth Amendment excessive force claim, a plaintiff must show only that the force was objectively unreasonable under the circumstances, *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016), meaning that there is no intent requirement.  Therefore, Mr. Slatton's allegations meet the three-part test established in *Dodds* for a Fourth Amendment violation.  614 F.3d at 1199.  Though

somewhat threadbare, Mr. Slatton's complaint alleges just enough facts to push his allegations against Chief Hutto over the line of plausibility.

City defendants assert that, nevertheless, Chief Hutto is entitled to qualified immunity. They argue that Mr. Slatton failed to allege a seizure, and thus there is no underlying constitutional violation.  ECF No. 98 at 8.  I have assumed for present purposes that there was a seizure but have concluded that it was a reasonable seizure.  Therefore, this argument is irrelevant, as no liability can attach to Chief Hutto for the seizure.

City defendants also argue that a finding of qualified immunity for Officer Hopkins on the excessive force claim should equally apply to Chief Hutto.  *Id.*  A finding of qualified immunity for one officer does not automatically entitle another to similar immunity:

> [C]ourts do not merely ask whether, taking the plaintiff's allegations as true, the plaintiff's clearly established rights were violated.  Rather, courts must consider as well whether each defendant's alleged conduct violated the plaintiff's clearly established rights.  For instance, an allegation that Defendant A violated a plaintiff's clearly established rights does nothing to overcome Defendant B's assertion of qualified immunity, absent some allegation that Defendant B was responsible for Defendant A's conduct.

*Dodds*, 614 F.3d at 1194 (quoting *Hope v. Pelzer*, 536 U.S. 730, 751 n.9 (2002) (Thomas, J., dissenting) (internal quotations omitted)).  However, in this case my finding of qualified immunity for Officer Hopkins does support a similar finding for Chief Hutto.  Above I concluded that Officer Hopkins' conduct did not violate a clearly established right.  Thus, Chief Hutto's alleged tolerance and encouragement of such conduct did not cause Officer Hopkins to violate a clearly established right.  Chief Hutto is entitled to qualified immunity for Mr. Slatton's excessive force claim.

      2.  <u>City of Fort Collins</u>.

City defendants argue that Mr. Slatton has failed to state a municipal liability claim because his allegations against the City of Fort Collins are conclusory rather than factual.  ECF No. 98 at 8–9.  I disagree.  In order to state a municipal liability claim a plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v. Okla. Cty. Bd. of Cty Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998).  A plaintiff may show "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; . . . or [] the failure to adequately train or supervise employees."  *Bryson v. Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

A complaint must do more than make conclusory assertions that the city has engaged in such a practice; it must articulate specific facts that, if true, support the existence of a practice. *See, e.g.*, *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) ("In order to state a facially plausible equal-protection claim under *Monell*, the factual allegations in [plaintiff's] complaint must allow us to draw the reasonable inference that the City established a policy or practice."); *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1214 (D.N.M. 2015) ("The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists."); *see also Svastics v. City of Beverly Hills*, 178 F.3d 1300 (9th Cir. 1999) (unpublished); *Granato v. City and Cty. of Denver*, No. 11-cv-00304 MSK-BNB, 2011 WL 3820730 (D. Colo. Aug. 30, 2011).  "With informal, unwritten policies, customs, or practices, the plaintiff can plead . . . a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the

misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible." *Griego*, 100 F. Supp. 3d at 1214.

Above I concluded that Mr. Slatton had alleged an excessive force violation against Officer Hopkins. In his complaint, Mr. Slatton outlines six additional incidents in which he alleges Fort Collins police officers used excessive force against individuals who did not threaten or resist officers. ECF No. 94 at 9–11. Though the facts alleged in some of these incidents differ significantly from those in Mr. Slatton's case, some of the incidents appear similar, in that a suspect was walking and hit with a baton or otherwise accosted by officers from behind. *Id.* Taken together these allegations at least raise a plausible inference that Fort Collins officers have a pattern of using excessive force on non-threatening individuals. Mr. Slatton has therefore stated a plausible municipal liability claim against the City of Fort Collins.

Mr. Slatton's Fourteenth Amendment claim against Chief Hutto and the City of Fort Collins is similarly predicated on Officer Hopkins' conduct. ECF No. 94 at 21–24. City defendants argue that Mr. Slatton cannot state a Fourteenth Amendment excessive force claim because the force occurred during an alleged seizure and therefore falls under the Fourth Amendment. As discussed above, I am inclined to agree, but if the proper niche is the Fourteenth Amendment, I still would agree that plaintiff has alleged enough to survive a motion to dismiss the claim against the City.

### ORDER

1. Defendant Hopkins' Motion to Dismiss, ECF No. 96, is GRANTED. The claims against him are dismissed with prejudice.

2.   Defendants Barnes, Hutto, and the City of Fort Collins' Motion to Dismiss, ECF No. 98, is GRANTED in part and DENIED in part.   The Court dismisses with prejudice the claims against defendants Barnes and Hutto.   However, the motion is denied with respect to plaintiff's claims against the City of Fort Collins.

DATED this 6th day of August, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge